## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **AMANDA LEIJA,** | ) |
| and | ) |
| **ABRIL COLEMAN,** | ) |
| and | ) |
| **BAILEY PULLUM,** | ) |
| and | ) |
| **RM,** a minor, by and through her natural guardian and mother, **Amanda Leija**, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No.: |
| vs. | ) |
| | ) |
| | ) |
| **DHAFER'S LLC d/b/a DHAFER'S MEDITERRANEAN STEAKHOUSE,** | ) ) |
| *Serve Registered Agent:* | ) |
| Dhafer K Al-Makuter | ) |
| 117 S. Locust | ) |
| Dexter, MO 63841 | ) |
| | ) |
| and | ) |
| | ) |
| **DHAFER K. AL-MAKUTER**, | ) |
| Serve at: | ) |
| Dhafer's Mediterranean Steakhouse | ) |
| 117 S. Locust | ) |
| Dexter, MO 63841 | ) |
| | ) |
| Defendants. | ) REQUEST FOR JURY TRIAL |

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs Amanda Leija, Abril Coleman, Bailey Pullum, and RM, a minor, by and through her natural guardian and mother, Amanda Leija (collectively "Plaintiffs"), by and through their attorneys, and bring this Complaint for Damages against Defendants Dhafer's LLC d/b/a Dhafer's Mediterranean Steakhouse ("Defendant Dhafer's Steakhouse") and Dhafer K. Al-Makuter ("Defendant Al-Makuter") (collectively "Defendants"), and allege and state as follows:

**Parties and Jurisdiction**

1. Plaintiff Amanda Leija ("Plaintiff Leija") is a citizen of the United States, residing in Bloomfield, Stoddard County, Missouri.

2. Plaintiff Abril Coleman ("Plaintiff Coleman") is a citizen of the United States, residing in Dexter, Stoddard County, Missouri.

3. Plaintiff Bailey Pullum ("Plaintiff Pullum") is a citizen of the United States, residing in Sikeston, Scott County, Missouri.

4. Plaintiff RM, a minor, by and through her natural guardian and mother Plaintiff Leija ("Plaintiff RM"), is a citizen of the United States, residing in Bloomfield, Stoddard County, Missouri.

5. Defendant Dhafer's Steakhouse is and was at all relevant times a limited liability company organized under the laws of Missouri, with its principal place of business in Dexter, Stoddard County, Missouri.

6. Defendant Dhafer's Steakhouse conducts substantial and continuous business and has substantial and continuous contacts with the State of Missouri.

7. Defendant Al-Makuter is and was at all relevant times the sole owner and member of Defendant Dhafer's Steakhouse, and a resident of Dexter, Stoddard County, Missouri.

8. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Missouri Eastern Division.

9. Jurisdiction and venue are proper in the Eastern District of Missouri Eastern Division pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 28 U.S.C. §1391(b).

## Jurisdiction and Venue

10. This Court has original federal question jurisdiction under 28 U.S.C. § 1311 for the claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

11. The United States District Court for the Eastern District of Missouri has personal jurisdiction because Defendant Dhafer's Steakhouse conducts business within this District, and Defendant Al-Makuter resides within this District.

12. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because these state law claims are so related to the FLSA claims that they form part of the same case or controversy.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant Dhafer's Steakhouse conducts business and can be found in the Eastern District of Missouri, Defendant Al-Makuter resides in the Eastern District of Missouri, and the cause of action set forth herein has arisen and occurred in part in the Eastern District of Missouri.

14. Venue is also proper under 29 U.S.C. § 1132(e)(2) because Defendant Dhafer's Steakhouse has substantial business contacts within the Eastern District of Missouri, and Defendant Al-Makuter resides within the Eastern District of Missouri.

15. At all relevant times, Defendants have been "employers" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

16. At all relevant times, Defendants have employed "employee[s]," including Plaintiffs.

17. At all relevant times, Plaintiffs were engaged in commerce and/or worked for Defendants.

## General Allegations Common to All Counts

18. Defendants jointly operate a restaurant called "Dhafer's Mediterranean Steakhouse" located at 117 S Locust St, Dexter, Stoddard County, Missouri 63841.

19. As the owner of Dhafer's LLC, Defendant Al-Makuter is responsible for hiring and firing of employees, supervising and directing employees' work, setting the work schedules for employees, controlling the conditions of employment—including the rates and method of compensation—for all employees, and maintaining all relevant employment records for all employees at the Dhafer's Mediterranean Steakhouse restaurant. Due to the pervasive control Defendant Al-Makuter has exercised and continues to exercise over the employees working for Defendant Dhafer's, Defendants are the joint employers of Plaintiffs.

20. Plaintiff Coleman worked for Defendants from approximately 2016 to approximately 2017 in the kitchen, and then from approximately 2017 to approximately November 2021 as a Server.

21. Plaintiff RM worked for Defendants from on or about June 28, 2020, to approximately early January 2023, as a Server.

22. Plaintiff Pullum worked for Defendants from on or about July 1, 2020, to on or about April 3, 2021, as a Server.

23. Plaintiff Leija worked for Defendants from on or about November 1, 2021, to approximately February 2023, as a Server.

24. Plaintiffs were considered tipped employees throughout their employment with Defendants, as they customarily and regularly received more than thirty dollars ($30) a month in tips.

25. Prior to the COVID-19 pandemic, Defendants were open for both lunch and dinner.

26. Since the COVID-19 pandemic began, Defendants are only open from approximately 4:00 PM to 8:00 PM; however, employees are still required to come before the restaurant is open and stay after the restaurant is closed to clean up.

27. Plaintiffs Leija, RM, and Pullum typically worked for Defendants Tuesdays through Saturdays from approximately 3:00 PM until anywhere from 8:00 PM to 12:00 AM.

28. Plaintiff Coleman typically worked for Defendants Tuesdays through Saturdays for both the lunch and dinner shift prior to COVID-19, and then worked the dinner shift from approximately 3:00 PM until anywhere from 8:00 PM to 12:00 AM after the COVID-19 pandemic began.

29. During their employment, Defendants did not pay Plaintiffs for all hours they worked at the full applicable minimum wage rate.

30. During their employment, Defendants also did not pay Plaintiffs for all hours they worked at the reduced minimum wage rate after applying a "tip credit."

31. In fact, Defendants never paid Plaintiffs any amount of hourly wages for the hours they worked during their employment.

32. Rather, Plaintiffs were solely compensated by the tips they received from customers during their employment with Defendants.

33. Accordingly, none of the Plaintiffs have ever received paychecks, paystubs, or direct deposit of wages from Defendants, as they have only been paid in tips from customers.

34. Plaintiffs regularly did not earn enough in tips to make at least the federal or state minimum wage per hour they worked.

35. Defendants have never withheld income or payroll taxes from the Plaintiffs' pay, as they have never given Plaintiffs actual paychecks.

36. Plaintiffs Leija, RM, and Pullum have never received an IRS Form W-2 from Defendants.

37. Plaintiffs often worked overtime, but were never compensated at the proper overtime rate, as they were not even paid an hourly wage any of the hours they worked

38. Plaintiffs, as well as numerous other employees, have regularly asked Defendants for an hourly wage.

39. Defendants have refused to pay Plaintiffs an hourly wage at the applicable minimum wage rate—or at the applicable minimum wage rate after applying a "tip credit," and have claimed they are "doing [Plaintiffs] a favor" because if Plaintiffs were paid an hourly wage then they would purportedly "make less" as Defendants would have to withhold taxes from their pay checks.

40. At other times, Defendants told Plaintiffs that the restaurant could not afford to pay them an hourly wage, but that Defendant Al-Makuter was "working on it."

41. On one occasion, Plaintiff Coleman complained to Defendants that because she was only being paid in tips, she did not want to perform any duties that she could not receive tips for performing.

42. Notably, Plaintiffs were regularly required to perform duties that were not tip-producing, including setting up the restaurant before it opened, and cleaning up the restaurant after it closed each night.

43. Defendant Al-Makuter responded to Plaintiff Coleman's complaint by saying Plaintiff Coleman was "greedy," and that he "didn't want to hear it;" he also told Plaintiff Coleman not to start any drama, stating "don't start with that shit."

44. In approximately November 2021, Plaintiff Coleman told Defendants that she was not making enough in tips so she needed to be paid an hourly wage or she could not continue to work for Defendants.

45. Defendants became defensive and again called Plaintiff "greedy," so Plaintiff was forced to resign.

46. Plaintiff Pullum also resigned in part due to the pay issues.

47. On many occasions, Defendants kept tips that were earned by Plaintiffs, instead of giving them all the tips they earned.

48. For example, one time when Plaintiff Leija received a $1,000 tip, Defendants kept half of that tip so that Plaintiff Leija only received $500.

49. On another occasion, a customer told Plaintiff Coleman and another server that she was leaving them each a $200 tip, as she was with a large party.

50. After the customer left, Defendants told Plaintiff Coleman and the other server that she had only left them each a $100 tip.

51. Notably, Plaintiff Coleman and the other server spoke with the customer later, and she said that she had in fact left them each a $200 tip.

52. Additionally, when there were larger groups at the restaurant, for example, when there were Christmas parties at the restaurant, Defendants would say they were "settling the tips", and Plaintiffs never knew if they were actually receiving all the tips they earned.

53. Defendants do not have a valid tip pooling or sharing arrangement.

54. Defendants never provided any of the Plaintiffs with the requisite tip credit notice information during their employment.

## COUNT I – FLSA CLAIM
**(All Plaintiffs against all Defendants)**

55. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

56. At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

57. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

58. Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are an enterprise engaged in interstate commerce and their employees are engaged in commerce.

59. Defendants jointly operate a restaurant located near the southeast border of Missouri in Dexter, Missouri, and likely serve customers from multiple states, including, but not limited to, Missouri, Kentucky, Illinois, Arkansas, and Tennessee.

60. Defendants have an annual gross volume of business in excess of $500,000.

61. Defendants are an enterprise acting "for a common business purpose" of running a restaurant.

62. Plaintiffs engaged in commerce.

63. Plaintiffs provided services for Defendants' customers who resided in Missouri.

64. At all relevant times to this action, Defendants were the "employers" of Plaintiffs within the meaning of the FLSA. 29 U.S.C. § 203(d).

65. At all relevant times to this action, Plaintiffs were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

66. Plaintiffs were covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiffs must be paid minimum wage in accordance with 29 U.S.C. § 206.

67. While the FLSA allows employers to take a tip credit towards the payment of minimum wage to tipped employees, it requires employers to pay tipped employees a minimum of

$2.13 per hour as long as that tipped employee earns enough tips to make up for the reduction in hourly pay to equal the federal minimum wage rate for each hour they worked. If the tipped employee does not earn sufficient tips to ensure they are making the federal minimum wage for each hour they work, the employer must supplement the tipped employee's hourly wage up to the minimum wage. 29 U.S.C. § 203(m)(2)(A).

68. When tipped employees are required to perform non-tipped job duties, the employer is required to pay the tipped employees the full minimum wage without taking a tip credit for the time spent completing those duties if they amount to more than 20% of the tipped employees' time spent working for the employer.

69. Additionally, an employer may not keep tips received by its tipped employees for any purpose, regardless of whether or not the employer takes a tip credit. 29 U.S.C. § 203(m)(2)(B).

70. An employer is not eligible to take a tip credit against the federal minimum wage "unless it has informed its tipped employees in advance of…[t]he amount of the case wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of the requirements in this section."  29 C.F.R. §531.59(b).

71. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of forty (40) hours in a workweek. 29 U.S.C. § 207(a).

72. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) apply here.

73. Defendants violated the FLSA by failing to pay Plaintiffs for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

74. Specifically, Defendants failed to do the following: (1) pay Plaintiffs at the full federal minimum wage or at the reduced minimum hourly wage of $2.13 after applying a tip credit for all hours Plaintiffs worked each workweek; (2) supplement Plaintiffs' hourly wage up to the minimum wage when Plaintiffs did not earn minimum wage in tips; (3) pay Plaintiffs full minimum wage without a tip credit for all hours spent performing non-tipped job duties; (4) give Plaintiffs all of the tips they earned, and instead kept tips for Defendants; (5) pay Plaintiffs at one and one-half times the regular rate for all hours worked in excess of forty (40) hours per week; (6) provide Plaintiffs with adequate notice of the requisite tip credit provisions before applying any tip credit to their hourly wages.

75. Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked.

76. Plaintiffs spent more than 20% of the time performing non-tipped duties for Defendants.

77. Defendants do not have a valid tip pooling or sharing arrangement set up.

78. Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay, as well as any tips they earned but were retained by Defendants, because

    Defendants acted willfully and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

79. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum and overtime wages, as well as any tips they earned but were retained by Defendants, as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

80. Plaintiffs seek damages in the amount of all respective unpaid minimum wage for all hours worked, overtime premium pay for work performed in excess of forty (40) hours in a work week, all tips that were earned by Plaintiffs but retained by Defendants, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

81. Plaintiffs seek recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

    WHEREFORE, Plaintiffs pray for relief as follows: (a) An award of damages for unpaid minimum wage and overtime wages, and earned tips kept by Defendants due for all Plaintiffs; (b) An award of liquidated damages, to be paid by Defendants; (c) An award of pre-judgment and post-judgment interest, as provided by law; (d) An award of costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees; and (e) Any and all such other and further relief as the Court deems necessary, just and proper.

## COUNT II – FAILURE TO PAY MINIMUM WAGE UNDER MISSOURI MINIMUM WAGE LAW
### (All Plaintiffs against all Defendants)

82. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

83. At all times relevant herein, Plaintiffs were entitled to the rights, protections, and benefits provided under Mo. Rev. Stat. § 290.500 *et seq*.

84. Defendants are employers as defined by Mo. Rev. Stat. § 290.500(4), and Plaintiffs are employees as defined by Mo. Rev. Stat. § 290.500(3).

85. The Missouri Minimum Wage Law regulates, among other things, the payment of minimum wages and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during or part of the applicable limitations period for a higher minimum wage than that provided for under federal law. Mo. Rev. Stat. §§ 290.500(3) & (4); Mo. Rev. Stat. § 290.505.1.

86. The Missouri Minimum Wage Law should be construed in accordance with its provisions and those of the FLSA. More specifically, the Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation of Missouri Minimum Wage Law follows the FLSA and its companion regulations. *See* 8 C.S.R. § 30-4.010(1).

87. Due to the non-exempt job positions Plaintiffs held with Defendants, Plaintiffs were entitled to receive at least the state-mandated minimum wage for each hour of work they performed each workweek. Mo. Rev. Stat. § 290.502.1.

88. While the Missouri Minimum Wage and Hour Law ("MMWHL") allows employers to take a tip credit towards the payment of minimum wage to tipped employees, it requires

employers to pay tipped employees a minimum of one half of the applicable state minimum wage per hour, and if a tipped employee does not make enough in tips equal to the minimum wage per hour, the employer must supplement the tipped employee's hourly wage up to the minimum wage. Mo. Rev. Stat. § 290.512(1).

89. Defendants failed to pay Plaintiffs at the rate of the state-mandated minimum wage for all hours they worked in each workweek.

90. Specifically, Defendants failed to do the following: (1) pay Plaintiffs the state minimum hourly "tip credit" wage per hour for all hours Plaintiffs performed tipped job duties, as required when taking a tip credit; (2) supplement Plaintiffs' hourly wage up to the minimum wage when Plaintiffs did not earn minimum wage in tips; (3) pay Plaintiffs full state minimum wage without a tip credit for all hours spent performing non-tipped job duties; (4) pay Plaintiffs the state minimum wage for all hours worked in each workweek; (5) provide Plaintiffs with adequate notice of the requisite tip credit provisions before applying any tip credit to their hourly wages.

91. Plaintiffs spent more than 20% of the time performing non-tipped duties for Defendants.

92. Plaintiffs are entitled to damages equal to the amount of unpaid minimum wages for all hours they worked within the three years preceding the filing of this Complaint because Defendants acted willfully and knew or showed reckless disregard for the matter of whether their conduct was prohibited.

93. Defendants know or should know the proper rate of pay for Plaintiffs as all persons are presumed to know and are bound to take notice of general public laws of the country or state where they reside as well as the legal effect of their acts. As a result thereof, Plaintiffs

are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages described above, pursuant to Mo. Rev. Stat. § 290.527.

94. Pursuant to Mo. Rev. Stat. § 290.527, Plaintiffs are also entitled to recover reasonable attorneys' fees and costs from Defendants.

WHEREFORE, Plaintiffs pray for relief as follows: (a) An award of damages for unpaid minimum wages due for Plaintiffs; (b) An award of liquidated damages, to be paid by Defendants; (c) An award of pre-judgment and post-judgment interest, as provided by law; (d) An award of costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees; and (e) Any and all such other and further relief as the Court deems necessary, just and proper.

## COUNT III – UNJUST ENRICHMENT
**(All Plaintiffs against all Defendants)**

95. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

96. Plaintiffs conferred a benefit on Defendants by completing work on their behalf and Defendants appreciated the benefits of Plaintiffs' work on their behalf.

97. Defendants accepted and retained the benefit of Plaintiffs' work on their behalf under circumstances that were inequitable or unjust in that Defendants did not pay a separate hourly wage to Plaintiffs for the work they performed and retained all or portions of customers' tips that were earned by Plaintiffs.

98. Defendants intentionally refused to pay Plaintiffs all earned tips from customers.

99. Defendants were aware or should have been aware that they were receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

100. It is unjust for Defendants to retain the benefits from the unpaid work performed by Plaintiffs.

101. Defendants also intentionally and improperly retained tips that were earned and owed to Plaintiffs.

102. Defendants were aware or should have been aware that they were receiving the benefit of tips that were earned by Plaintiffs and accepted and retained that benefit without paying fair compensation for the same.

103. It is unjust for Defendants to retain the benefits from Plaintiffs' earned and owed tips.

WHEREFORE, Plaintiffs pray for relief as follows: (a) Order Defendants to disgorge the value of their ill-gained benefits to Plaintiffs; (b) An award of pre-judgment and post-judgment interest as provided by law; and (c) For such other orders and further relief, including an award of costs and attorneys' fees, as this Court deems just and equitable.

### COUNT IV – BREACH OF CONTRACT
**(All Plaintiffs against all Defendants)**

104. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

105. An employment agreement existed between Plaintiffs and Defendants, the terms and conditions of which included a requirement for employees to perform services for Defendants and an agreement by Defendants to pay Plaintiffs for all work performed, as well as to pay Plaintiffs all of their earned tips.

106. The agreements were made between parties capable of contracting and contained mutual obligations and valid consideration. Plaintiffs have performed all conditions precedent, if any, required of Plaintiffs under their employment agreements.

107. Defendants failed and refused to perform their obligations in accordance with the terms and conditions of their employment agreements by failing to compensate Plaintiffs for all time worked on behalf of Defendants and by failing to pay Plaintiffs all tips they earned.

108. Plaintiffs were thereby damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for relief as follows: (a) An award of compensatory damages; (b) An award of pre-judgment and post-judgment interest as provided by law; and (c) For such other orders and further relief, including an award of costs and attorneys' fees, as this Court deems just and equitable.

**Demand for Jury Trial and Designation of Place of Trial**

Plaintiffs request a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

**CORNERSTONE LAW FIRM**

By:   */s/* Lauren H. Beck
M. Katherine Paulus   MO 60217
m.paulus@cornerstonefirm.com
Lauren H. Beck        MO 72724
l.beck@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone             (816) 581-4040
Facsimile             (816) 741-8889
**ATTORNEYS FOR PLAINTIFF**